Christopher Campbell, Esq. SBN 309234
ccampbell@lydecker.com
Bryan Miller, Esq. SBN 178134
bmiller@lydecker.com
Javkhlan Enkhbayar, Esq. SBN 327764
jenkhbayar@lydecker.com
**LYDECKER**
523 West Sixth Street, Suite 716
Los Angeles, CA 90014
Telephone: (213) 226-7068
Facsimile: (213) 293-4425

Attorneys for University of Central Florida

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual, | CASE NO.: 2:25-CV-02191-HDV-KES |
| Plaintiff, | Assigned to |
| | Hon. Hernán D. Vera, Courtroom 5B |
| vs. | |
| | **NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT THE UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES ERRONEOUSLY SUED AS THE UNIVERSITY OF CENTRAL FLORIDA UNDER 28 U.S.C. SECTIONS 12(b)(2) AND 12(b)(6)** |
| JOHN ROE 1, an individual; JOHN ROE 2, an individual; and DOES 1-100 inclusive, | |
| Defendants. | |
| | [REQUEST FOR JUDICIAL NOTICE UNDER FED. R. EVID. 201; DECLARATION OF BRYAN BARNET MILLER RE MEET AND CONFER UNDER LOCAL RULE 7-3 filed concurrently herewith] |
| | **DATE:    May 15, 2025** <br> **TIME:    10:00 a.m.** <br> **PLACE: Courtroom 5B** |

1

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT:**

**PLEASE TAKE NOTICE** that the Defendant UNIVERSITY OF CENTRAL FLORIDA ("UCF"), by and through its counsel LYDECKER LLP, submits the following memorandum of points and authorities in support of its Motion to Dismiss Plaintiff Jane Doe's ("Plaintiff") Complaint pursuant to 28 USC sections 12(b)(2) and 12(b)(6). This Motion will be and is based on this notice and the accompanying memorandum of points and authorities.

This Motion will be and is also based on the pleadings, papers, and records presently on file in this action, on such further pleadings and papers as may hereinafter be presented, and on such oral and documentary evidence and objections as may be properly presented at the hearing on this Motion.

As to Rule 12(b)(6), plaintiff fails to state a cause of action for negligent defamation at p 9. 8:7-28 -9:1-20.

Dated: April 14, 2025                **LYDECKER**

_____
Christopher Campbell
Bryan Barnet Miller
Javkhlan Enkhbayar

NOTICE AND MOTION UNDER RULE 12(B)(2) AND 12(B)(6)

1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 2

III.    LEGAL ARGUMENT ................................................................................ 3

   A. STANDARD FOR DISMISSAL UNDER 12(b)(2) ................................. 3

      1.)    NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE
             GENERAL JURISDICTION OVER THE UNIVERSITY OF
             CENTRAL FLORIDA UNDER *DAIMLER* AND ITS PROGENY. . 4

      2.)    NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE
             SPECIFIC JURISDICTION BECAUSE PLAINTIFF'S CLAIMS
             DO NOT ARISE OUT OF THE UNIVERSITY OF CENTRAL
             FLORIDA'S CONTACTS WITH THE FORUM ............................. 6

         (a.)    There is no showing of purposeful availment ......................... 8

         (b.)    The claim must arise out of the defendant's forum-related
                 activities. ............................................................................... 9

         (c.)    Plaintiff cannot satisfy the first two prongs ......................... 9

            (i)    Ninth Circuit Jurisprudence ............................................ 9

            (ii)   California District Court Jurisprudence ........................ 10

            Dr. Douglas fails to establish any nexus between the UCF and
            Florida Politics and/or the College Fix ................................. 11

B. STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)...............................12

The Negligent Defamation Claim.................................................13

IV.    CONCLUSION ............................................................................14

NOTICE AND MOTION UNDER RULE 12(B)(2) AND 12(B)(6)

# TABLE OF AUTHORITIES

**Cases**

*Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187

    (10th Cir. 2018) ................................................................................... 13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................... 12, 13, 14

*Bautista v. Los Angeles Cty.*, 216 F.3d 837 (9th Cir. 2000) ................. 12

*BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) ...................................... 4

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,

    582 U.S. 255 (2017) ......................................................................... 7, 11

*Burger King Corp. v. Rudzewicz* 471 U.S. 462 (1985) ........................... 7

*Campanelli v. Regents of Univ. of Calif.* 44 Cal.App.4th 572 (1996) ................. 13

*Christian Research Institute v. Alnor* 148 Cal.App.4th 71 (2007). ...................... 13

*Church of Scientology v. Adams*, 584 F.2d 893 (9th Cir.1978) ........................ 9, 10

*Daimler AG v. Bauman* 571 U.S. 117 (2014) ................................................. passim

*Delker v. MasterCard Int'l, Inc.,* 21 F.4th 1019 (8th Cir. 2022) ........................ 12

*Demaris v. Greenspun*, 712 F.2d 433 (9th Cir. 1983) ................................... 10

*DVI, Inc. v. Superior Court* 104 Cal. App. 4th 1080 (2002) .............................. 5

*Fireman's Fund Ins. Co. v. National Bank of Cooperatives*

    103 F.3d 888 (1996) ............................................................................. 3

*Fong v. Total Health Dental Care Support*, No. RG19035825, LEXIS 21075, *59

    (2021 Alameda Super. Ct.) ................................................................. 13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).....3, 7, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915 (2011) .........4, 5

*Hanson v. Denkla* 357 U.S. 235 (1958) ...................................................................7

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,*
326 U.S. 310 (1945) ...................................................................................................7

*Keeton v. Hustler Magazine, Inc.* 465 U.S. 770 (1984)..........................................7

*Perkins v. Benguet Consol. Mining Co.* 342 U.S. 437 (1952)................................4

*Reintegrative Therapy Ass'n, Inc. v. Kinitz,* No. 3:21-CV-1297-BEN-BLM,
2021 WL 5140195 (S.D. Cal. Nov. 4, 2021) ................................................10, 11

*Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797 (2004).....................8, 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ...........3

*Smith v. Hood*, 900 F.3d 180  (5th Cir. 2018).......................................................13

*Smith v. Maldonado* 72 Cal.App.4th 637 (1999).................................................13

*Taylor v. Yee*, 780 F.3d 928 (9th Cir. 2015) .........................................................12

*ViaView, Inc. v. Retzlaff,* 1 Cal. App. 5th 198 (2016) ...................................3, 4, 6

*Walden v. Fiore* 571 U.S. 277 (2014)................................................................7, 8

*World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286  (1980).......................7

**Statutes**

*Cal. Code Civ. Proc.* § 410.10 ...............................................................................3

NOTICE AND MOTION UNDER RULE 12(B)(2) AND 12(B)(6)

## I.    INTRODUCTION

This negligent defamation case stems from an article published by Florida Politics LLC ("Florida Politics") in January of 2023. At the time, Plaintiff ("Dr. Douglas[1]" or "Plaintiff") was concurrently working at two separate Universities: one on the East Coast, the University of Central Florida ("UCF"), and one on the West Coast, the University of California, Los Angeles ("UCLA"). Plaintiff contends that the Florida Politics article was defamatory and included false and damaging statements regarding her career.

Defendant UCF has no affiliation with Florida Politics, and Plaintiff fails to allege facts or theory establishing such affiliation. Concomitantly, Plaintiff fails to allege that the single statement purportedly attributable to UCF was false. Plaintiff alleges that UCF made <u>one</u> comment about her absence from work at or around the period of the COVID pandemic, which Plaintiff concedes is entirely true on the face of her own Complaint.

Plaintiff's Complaint thereafter disjointedly discusses a number of allegedly defamatory statements throughout the Article, for instance regarding the "secrecy" of Dr. Douglas's dual appointment with UCF/UCLA and the "unraveling" of Plaintiff's career. However, Dr. Douglas makes no contention that any of these alleged statements were, or could be, attributed to UCF.

Dr. Douglas also fails to allege the existence of a nexus between UCF and Florida Politics that did, or could, render UCF responsible for any statements made in the article. The sole exception is the statement concerning Dr. Douglas's absences around the pandemic, which, again, Plaintiff concedes is true.

---

[1] The operative Complaint was initially filed in Los Angeles Superior Court, S. Michael Kernan, Esq. of The Kernan Law Firm on behalf of JANE DOE. Michael Kernan, Esq. publicly filed a substitution of attorney on October 16, 2024, signed by one Pamela Douglas to represent herself *in propria persona* (attached to UCF's Petition for Removal). [ECF No. 1]. The identity of JANE DOE as Dr. Pamela Douglas is a matter of public record.

It is unclear why this lawsuit was originally brought in California Superior Court. The putative defendants, Florida Politics and the UCF, are in Florida. The Plaintiff was employed in Florida. The purportedly defamatory statements were published in Florida. California is an inconvenient forum, and the action currently before this Court would more appropriately and justly be tried elsewhere.[2] The Court should dismiss this instant matter *cause infra*, which will allow the litigants to address their dispute in a more appropriate venue.

## II.    FACTUAL BACKGROUND

In the Fall of 2016, Defendant UCF employed Plaintiff as a tenure-track assistant professor. During the period leading up to the COVID pandemic beginning in 2020, Plaintiff's career outside of her employment with Defendant included "lecturing at numerous scientific conferences and speaker series" which caused her to be absent from her work at UCF on several occasions. [ECF No. 1].

On October 20, 2022, UCF provided Plaintiff with notice of intent to terminate her employment and gave her ten calendar days to respond. Her response was untimely. On November 1, 2022, Plaintiff was officially terminated. On January 19, 2023, Florida Politics LLC ("Florida Politics") contacted UCF asking for comments on Plaintiff related to an article titled "Ghosted: Double Life of UCF Professor Unravels" ("the Article"). The only statement in the Article attributed to UCF is commentary that Plaintiff was often absent in the time prior to the pandemic. Neither Dr. Douglas, nor Florida Politics, attribute any other statements in the Article to Defendant.

On January 22, 2023, months after Plaintiff's termination, Florida Politics published an Article about Dr. Douglas. Later in January 2023, the web-based publisher, The College Fix, published its own article – "Professor secretly held two full-time jobs on opposite coasts" – restating and paraphrasing the content in the Article

---

[2] In these papers, UCF, does not discuss forum non conveniens or choice of law but hereby expressly reserves its rights to raise these issues subsequently. These arguments are not waived by means of this briefing.

from Florida Politics. Neither the "College Fix" or "Florida Politics" are related to the UCF. Simply said, any nexus between the College Fix and Florida Politics is tenuous, attenuated, and the single comment by UCF was true.

## III.    LEGAL ARGUMENT

Although Rule 12(b)(2) (lack of personal jurisdiction) and Rule 12(b)(6) (failure to state a claim) standard differ, both must be addressed here because the allegations supporting personal jurisdiction are conclusory. The Complaint lacks factual allegations that would withstand Ninth Circuit scrutiny.

### A.    <u>STANDARD FOR DISMISSAL UNDER 12(b)(2)</u>

To rule on the merits of a case, a federal court must first determine that it has jurisdiction over the category of the claim in suit and the parties. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-431 (2007). In determining whether a federal court has jurisdiction over a party, the federal court ordinarily relies on state law. *Daimler AG v. Bauman* 571 U.S. 117, 225 (2014). "In a diversity action, the US District Court may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under California's long-arm statute and if that exercise of jurisdiction accords with federal constitutional due process principles." *Fireman's Fund Ins. Co. v. National Bank of Cooperatives* 103 F.3d 888, 893 (1996). California's long-arm statute states "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." *Cal. Code Civ. Proc.* § 410.10.

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). When a defendant moves to quash service of process, "the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction." *ViaView, Inc. v. Retzlaff,* 1 Cal. App. 5th 198, 209-210 (2016). To carry this burden, the plaintiff must "come forward with affidavits and other

///

competent evidence … and cannot simply rely on allegations in an unverified complaint." *Id.* at 210.

1.) NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE GENERAL JURISDICTION OVER THE UNIVERSITY OF CENTRAL FLORIDA UNDER *DAIMLER* AND ITS PROGENY.

A court may only assert general jurisdiction over foreign (sister-state or foreign-country) corporations when their affiliations with the State are so "'continuous and systematic' as to render them essentially at home in the forum State." *See*, *Daimler AG v. Bauman* 571 U.S. 117, 127 (2014), ("Daimler") *quoting*, *Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915, 925 (2011) ("Goodyear"). Only in an "exceptional case" can a court exercise general jurisdiction in a forum that is not "the corporation's place of incorporation [or] its principal place of business." *See*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412 (2017) ("BNSF"). An example of an exceptional case is when war forces a "corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which becomes "the center of the corporation's wartime activities." *Id.*, *quoting, Perkins v. Benguet Consol. Mining Co.* 342 U.S. 437, 448 (1952). No such exceptional case exists here.

In *Daimler*, *supra*, 571 U.S. 117, the Court declined plaintiff's invitation to "look beyond the exemplar bases Goodyear identified [place of incorporation and principal place of business], approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Id*. at 137-138. "That formulation … is unacceptably grasping" and would impermissibly result in "exorbitant exercises of all-purpose jurisdiction" in every "State in which [a company's] sales are sizable." *Id.* at 138, the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" 139. **The proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and**

systematic" as to render [it] essentially at home in the forum State.'" (Emphasis added.) *Daimler, supra*, 571 U.S. at 138–139, *quoting Goodyear, supra*, 564 U.S. at 919.)

"A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139, n. 20. "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (*id*.) In analyzing general jurisdiction, courts "examine the defendant's contacts when the alleged conduct occurred and at the time of service of summons." *DVI, Inc. v. Superior Court* 104 Cal. App. 4th 1080, 1100 (2002).

UCF is a public university in the State of Florida. UCF is not incorporated in California. UCF's headquarters are not in California. UCF's principal place of business is not in California. UCF does not conduct business in California. UCF's campus and headquarters are in Florida. UCF is not now and never has been "at home" in California. *Daimler, supra*, 571 U.S. at 127. "A corporation that operates in many places can scarcely be deemed at home in all of them." *id*. at 139, n. 20. "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (*id*.) In analyzing general jurisdiction, courts "examine the defendant's contacts when the alleged conduct occurred and at the time of service of summons." *DVI*, 104 Cal.App.4th 1080, at 1100.

UCF is a public university in the State of Florida. UCF is not incorporated in California. UCF's headquarters are not in California. UCF's principal place of business is not in California. UCF does not conduct business in California. UCF's campus and headquarters are in Florida. UCF is not now and never has been "at home" in California. *Daimler*, supra, 571 U.S. at 127.

[See Request for Judicial Notice, filed concurrently herewith, Exhibit "A": 2024 Florida Statutes 1001.75, Definitions under Section 7, Article IX of the Florida Constitution, para. 1 subd.

(d) definition of State Structure; Exhibit "B": Para: 5, "Florida College System Institution, Para. 9 subd. (g), includes the University of Central Florida; Exhibit "C": State university governance, para. (8) State College System; Exhibit "D": The headquarters and principal place of business of the University of Central Florida is at 4000 Central Florida Boulevard, Orlando, Florida, 32816.]

Critically, Plaintiff's Complaint does not contest otherwise. [ECF No. 1] (see Complaint, §2, ¶¶ 6-7, "Jurisdiction & Venue")

There is no jurisdiction over the Florida State University in California because UCF does not have any "continuous and systematic" affiliations with California.

2.) NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE SPECIFIC JURISDICTION BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF THE UNIVERSITY OF CENTRAL FLORIDA'S CONTACTS WITH THE FORUM

The Court may also exercise of specific personal jurisdiction based upon an examination of evidence presented by the Plaintiff. To carry the burden of establishing entitlement to jurisdiction, the plaintiff must "come forward with affidavits and other competent evidence … and cannot simply rely on allegations in an unverified complaint." *ViaView* at 210. The plaintiff has offered only an unverified Complaint to establish jurisdiction. This is categorically insufficient under *ViaView*.

However, even if the Court were to consider the allegations of Plaintiff's unverified Complaint, Plaintiff has failed to establish that UCF would be subject to specific personal jurisdiction. The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. "Due process limits on the State's adjudicative authority principally protect the liberty of the

nonresident defendant — not the convenience of plaintiffs or third parties." *See, Walden v. Fiore* 571 U.S. 277, 284 (2014).

As discussed, *supra*, California's long-arm statute is coextensive with federal due process requirements under the Fourteenth Amendment due process clause. Specific jurisdiction is founded "on an idea of reciprocity between a defendant and a State: When (but only when) a company 'exercises the privilege of conducting activities within a state'— thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the company to account for related misconduct." *Ford* 592 U.S. 351, at 359, *quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945). Thus, "[t]he focus of the specific-jurisdiction analysis is 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, *supra*, 571 U.S. at 284, *quoting*, *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 775 (1984).

First, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" (*Ford*, *supra*, 592 U.S. 351, at 359, *quoting, Hanson v. Denkla* 357 U.S. 235, 253 (1958). Second, the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." (*Id.* at 359, *quoting Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,* 582 U.S. 255, 262 (2017), *quoting, Daimler, supra*, 571 U.S. at 127.

These two requirements are meant to provide a defendant "with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" See *Ford, supra*, 592 U.S. 351, at 358, *quoting Burger King Corp. v. Rudzewicz* 471 U.S. 462, 472 (1985). "A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Id., quoting World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 297 (1980) ("*World-Wide Volkswagen*").

/ / /

NOTICE AND MOTION UNDER RULE 12(B)(2) AND 12(B)(6)

In determining whether the defendant has sufficient minimum contact with the forum state, Courts apply the following test:

(a.) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws;

(b.) The claim must arise out of the defendant's forum-related activities, and the exercise of jurisdiction must be reasonable.

(c.) The plaintiff bears the burden of satisfying the first two prongs and its failure to do so results in the court's lack of personal jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 802 (2004).

The main focus of this inquiry is what, if any, contacts the defendant himself has created with the forum state. *Walden v. Fiore* 571 U.S. 277, 284 (2014). In other words, the convenience of plaintiffs or third parties or plaintiff's contact with the forum state, no matter how significant it may be, are not considered in determining whether a court has specific jurisdiction over the defendant. *Id.* at 285. **Where the plaintiff experienced the injury is irrelevant**. *Id.* at 290.[3]

UCF is a Florida State Institution, with its headquarters and principal place of business located in Florida. (UCF Decl. ¶¶ 12-22.) Thus, unsurprisingly, the *Schwarzenegger* factors uniformly indicate that no basis exists for the Court to exercise jurisdiction over this case:

(a.)    There is no showing of purposeful availment

Plaintiff does not offer facts indicating that UCF conducted activities in the forum state of California. It is not "purposeful availment" for a third party to issue

---

[3] In her Complaint, Plaintiff focused entirely her place of residence her Principal Place of Business and/or Work in California. Plaintiff's pleading is devoid focus on the University of Central Florida (UCF) which is her burden to carry.

statements that were "accessible to individuals in Los Angeles County" (Complaint at ¶8) via a new outlet.

To wit, Plaintiff states that statements were made "negligently." Even if the Court were to set aside terms of art, the common meaning of negligence implies a lack of care or attention. The operative term in the *Schwarzenegger* analysis is "purposeful," which suggests a deliberate, intentional action with a specific aim.

(b.) <u>The claim must arise out of the defendant's forum-related activities.</u>
Plaintiff fails to establish any forum-related activities by UCF. There is no nexus between "Florida Politics" and the "College Fix" (Complaint, ¶¶23-32, 33-35.)

(c.) <u>Plaintiff cannot satisfy the first two prongs</u>

Plaintiff cannot carry her burden to satisfy the first two prongs of the *Schwarzenegger* analysis because, as a threshold matter, Plaintiff has not alleged any facts that might support the first two prongs of the *Schwarzenegger* analysis. The court cannot assert personal jurisdiction over Defendant UCF by requisite application/operation of procedure.

(i)    *Ninth Circuit Jurisprudence*

The Ninth Circuit refused to find personal jurisdiction over the St. Louis-Post Dispatch, a Missouri publication, after it published five articles regarding Scientology. *Church of Scientology v. Adams*, 584 F.2d 893, 895 (9th Cir.1978). The California branch of the Church Scientology alleged that defendants made defamatory statements regarding how the church operates and treats its members, and about its founder. *Id*. at 895-896.

The court found that the defendants did not do business in California and did not advertise to the California market. *Id.* at 896. The court also found that the California circulation of defendant's newspaper consisted less than 1% of its general circulation. *Ibid*. Furthermore, the court found that defendants did not write about events occurring in California, that they did not do research in California, and that the only mention of a California resident was in reference to a person who was

1   acting as a representative of the national Scientology organization. *Id.* at 898. Based

2   on these findings, the court ruled that it did not have personal jurisdiction over

3   defendants. *Demaris v. Greenspun*, 712 F.2d 433, 434 (9th Cir. 1983). [The

4   applicable test is "whether or not it was foreseeable that a risk of injury by

5   defamation would arise in the forum state." The Court noted that California events

6   "were not the topic of the allegedly actionable writings, nor California readers a

7   principal or secondary target of the articles." No research was done in California

8   and the discussion was not as to the church's existence and activities in California;

9   the discussion was of Scientology in general.]

10              (ii)    *California District Court Jurisprudence*

11          In *Reintegrative Therapy Ass'n, Inc. v. Kinitz,* No. 3:21-CV-1297-BEN-BLM,

12   2021 WL 5140195 (S.D. Cal. Nov. 4, 2021) the court did not find Plaintiff's injury

13   in California sufficient to meaningfully connect defendants, Canadian citizens, to

14   the forum state. *Reintegrative Therapy Association*, at 8. The plaintiff in

15   *Reintegrative Therapy Association*, a California resident, filed a defamation suit

16   against defendants for publishing an article in a scholarly journal owned by a third

17   party. *Id.* at 1. In the article, defendants stated that "conversion therapy" can be

18   referred to as "reintegrative therapy." *Id.* Plaintiff argued that this statement was

19   defamatory because plaintiff did not seek to change a person's sexual orientation

20   but rather focused on treating trauma and addiction. *Id*. at 2. The plaintiff argued

21   that its reputational harm occurred in California because plaintiff resided and

22   conducted business in California. *Id.* at 5.

23          Plaintiff in *Reintegrative Therapy Association* further contended that when

24   asked to issue a retraction, Defendants refused to do so, which was further

25   indication of defendants' intent to harm Plaintiff's reputation. *Id.* at 5. Furthermore,

26   plaintiff argued that the online publisher of defendants' article was connected to

27   California because it had a "California Consumer Privacy Statement" published on

28   its webpage and that the publisher's connection was sufficient to connect

defendants to California as well. *Id*. at 5. The court found none of these contentions persuasive and found that it did not have personal jurisdiction over defendants because: the article did not specifically refer to Plaintiff or its founder, because the term reintegrative therapy" was used only once, and because the article did not focus on Plaintiff's California-based activities. *Id*. at 6.

This is exactly Plaintiff's argument at paragraph 9 of the Complaint at issue. In this case, the only statement that is directly attributable to Defendant is the statement regarding how Dr. Douglas was often absent in the time prior to the pandemic. This statement specifically focuses on Plaintiff's conduct, or lack thereof, in the state of Florida. Markedly absent from said statement is any mention of California or of Plaintiff's activities in California. (Complaint ¶27.)

> *Dr. Douglas fails to establish any nexus between the UCF and*
> *Florida Politics and/or the College Fix*

It is well established that in order for a court to exercise specific jurisdiction, the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford, supra*, 592 U.S. 351, at 359, *quoting, Bristol-Myers*, at 358, *quoting Daimler, supra*, 571 U.S. at 127. A defendant's forum-state conduct is not "sufficient—or even relevant" if it has no connection to a plaintiff's claim. *Bristol-Myers*, at 1781. Plaintiff's claim, if any, is against Florida Politics and the College Fix, not UCF.

Plaintiff's Complaint is defective at every logical step. First, no viable claim of defamation can arise from the purported statements by UCF agents Roe 1 and Roe 2 because the statements are true according to Plaintiff's own allegations. (Complaint ¶27). On the face of the Complaint, neither Plaintiff nor UCF dispute that Plaintiff was often absent from her job before the pandemic; Plaintiff would have simply preferred that the Article contain more detail about the circumstances. All other facts and opinions in the Article stemmed from sources other than UCF. These are issues fit for the publication's editor, not a court of law.

Second, the Complaint fails to allege any facts that meaningfully connect UCF, Florida Politics, and College Fix in such a way that Florida Politics' statements could be in any way attributable to UCF. Plaintiff does not allege that UCF made statements targeting California to Florida Politics. Plaintiff does not allege that UCF made any statement at all to College Fix. Plaintiff does not allege any facts indicating that UCF contributed to Florida Politics' independent statements concerning Plaintiff's "unraveled" career. Plaintiff does not allege that UCF had any involvement in Florida Politics' independent statements being republished by the College Fix in such a manner that it was available to California audiences. The fact that Plaintiff resides in California and that her reputation may have been injured in California are insufficient for the Court to assert personal jurisdiction over Defendant without violating due process. (*Id.*) ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").

Dr. Douglas' complaint is rife with speculation and lacks foundation to confer Personal Jurisdiction over UCF. Her complaint must be dismissed.

**B.    <u>STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).</u>**

A claim is also subject to a dismissal if there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *see Delker v. MasterCard Int'l, Inc.,* 21 F.4th 1019, 1024 (8th Cir. 2022). A "claim" is the set of "well-pleaded" factual allegations in a pleading which are intended by the pleader to establish a "plausible" right to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (a claim is the "aggregate of operative facts which give rise to a right enforceable in the courts")

In addition to holding that only a plausible claim for relief will survive a motion to dismiss, the *Iqbal* Court underscored that the "tenant that a court must accept as true all of the allegations contained in a complaint as inapplicable to legal

conclusions." *Iqbal, supra*, 556 U.S. at 678; *Smith v. Hood*, 900 F.3d 180, 184 n. 5 (5th Cir. 2018) (allegation that plaintiff's commitment was "unlawful" is a "legal conclusion entitled to no presumption of correctness"); *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018).

### The Negligent Defamation Claim

Defamation involves the "intentional publication of a statement of fact that is false, unprivileged, and has a tendency to injure or which causes special damage. *Smith v. Maldonado* 72 Cal.App.4th 637, 644 (1999). Furthermore, plaintiff has the burden to prove falsity of the allegedly defamatory statement by a preponderance of evidence. *Christian Research Institute v. Alnor* 148 Cal.App.4th 71, 81 (2007). Truth is an absolute and complete defense to a claim for defamation. (*Smith v. Maldonado* 72 Cal.App.4th 637, 646, 648 (1999).)[4]

As discussed above, Plaintiff's sole contention allegedly attributable to UCF throughout the entirety of the Complaint is that "[p]laintiff was often absent in the time prior to the pandemic." (Complaint ¶27). Plaintiff admits this fact as true in the same sentence, noting that Defendant made this comment "despite [it] approving her travel." By way of party opponent admission, Plaintiff cannot prove by a preponderance of evidence that Defendant's statement is false, negating Plaintiff's claim of defamation.

Plaintiff's sole factual allegation against UCF is also nebulous, amorphous, and unclear. It is impossible from Plaintiff's vague synopsis to determine what statements UCF made or did not make with respect to Plaintiff. Therefore, Plaintiff has not alleged facts with sufficient particularity to ascertain the nature of the

---

[4] "The defendant need not justify the literal truth of every word of the allegedly defamatory matter. It is sufficient if the defendant proves true the substance of the charge, irrespective of the slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark.'" (Smith, 72 Cal.App.4th at 646-647; see also, *Campanelli v. Regents of Univ. of Calif.* 44 Cal.App.4th 572, 581-582 (1996).) *Fong v. Total Health Dental Care Support*, No. RG19035825, LEXIS 21075, *59 (2021 Alameda Super. Ct.)

1  purportedly defamatory publication. Therefore, the Plaintiff has failed to state a
2  claim upon which relief can be granted.

3      Furthermore, the cause of action for negligent defamation is impermissibly
4  conclusory and boilerplate. (Complaint ¶¶36-49). By way of example, the
5  Complaint relies upon, as its factual basis, phrases such as: "the defamatory
6  statements" (¶37), "unreasonably and negligently" (¶38), "defamatory" (¶¶40, 41),
7  "libelous per se", "slanderous per se" (¶43),"defamatory per se" (¶¶45, 47),
8  "fraudulently", "malice" (¶49). These statements are all conclusions of law which
9  cannot form the requisite basis of an actionable claim under *Iqbal* and *Twombly*
10  standards.

## IV.    CONCLUSION

11      Plaintiff, Dr. Douglas, fails in her burden to support the assertion of Personal
12  Jurisdiction over the University of Central Florida. Moreover, the entire complaint
13  is devoid of facts that would support a cause of action for defamation. Plaintiff
14  further fails to state a cause of action for negligent defamation because (1) falsity is
15  an element of defamation, and (2) truth is a complete defense to the cause of action
16  alleged, and (3) Plaintiff establishes no relationship between the College Fix and
17  Florida Politics. Finally, as matter of standard form and substance, Plaintiff's claim
18  of defamation is devoid of facts and impermissibly conclusory under *Iqbal* and
19  *Twombly*. Based on the foregoing, Defendant UCF respectfully requests that the
20  Complaint be dismissed under Rule 12(b)(2).

21  Date April 14, 2025                    **LYDECKER**

22

23

24                                          Christopher J. Campbell
25                                          Bryan Barnet Miller
26                                          Javkhlan Enkhbayar
                                            Attorneys for the University of Central
27                                          Florida Board of Trustees erroneously
                                            sued as The University of Central
28                                          Florida

14

## PROOF OF SERVICE

United States District Court

Central District of California

*Jane Doe*

v.

*John Roe 1, et al.,*

Case No. 2:25-cv-02191-HDV-KES

I, Devon MacGregor, am employed in Los Angeles County, California. I am over the age of 18 years and not a party to the within action. My business is 523 W. 6th Street, Suite 716, Los Angeles, CA 90014, (213) 226-7068.

On April 14, 2025, I caused to be served the following documents(s): as follows:

**NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT THE UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES ERRONEOUSLY SUED AS THE UNIVERSISTY OF CENTRAL FLORIDA UNDER 28 U.S.C. SECTIONS 12 (b)(2) AND 12(b)(6).**

**BY ELECTRONIC SERVICE:** I caused said documents to be transmitted by electronic mail. The name(s) and email address(es) of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

I declare that penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on April 14, 2025, at Winchester, California.

*Devon MacGregor*
Devon MacGregor

**SERVICE LIST**

United States District Court

Central District of California

*Jane Doe*

v.

*John Roe 1, et al.,*

Case No. 2:25-cv-02191-HDV-KES

Pamela Douglas
pkdouglas16@gmail.com
Plaintiff in Pro Per

NOTICE AND MOTION UNDER RULE 12(B)(2) AND 12(B)(6)