Christopher Campbell, Esq. SBN 309234
ccampbell@lydecker.com
Bryan Miller, Esq. SBN 178134
bmiller@lydecker.com
Javkhlan Enkhbayar, Esq. SBN 327764
jenkhbayar@lydecker.com
**LYDECKER**
523 West Sixth Street, Suite 716
Los Angeles, CA 90014
Telephone: (213) 226-7068
Facsimile: (213) 293-4425

Attorneys for University of Central Florida's Board of Trustees
erroneously sued as the University of Central Florida

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>      Plaintiff,<br><br>vs.<br><br>JOHN ROE 1, an individual; JOHN ROE 2, an individual; and DOES 1-100 inclusive,<br><br>      Defendants. | CASE NO.: 2:25-CV-02191-HDV-KES<br><br>Assigned to<br>Hon. Hernán D. Vera.<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT THE UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES ERRONEOUSLY SUED AS THE UNIVERSITY OF CENTRAL FLORIDA UNDER 28 U.S.C. SECTIONS 12(b)(2) AND 12(b)(6)**<br><br>[*Request for Judicial Notice Under Fed. R. Evid. 201; Declaration of Bryan Barnet Miller Re Meet and Confer Under Local Rule 7-3 Filed Concurrently Herewith*]<br><br>**DATE:   July 17, 2025.**<br>**TIME:   10:00 a.m.**<br>**PLACE: Courtroom 5B** |

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT:**

PLEASE TAKE NOTICE that the Defendant UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES ERRONEOUSLY SUED AS THE UNIVERSITY OF CENTRAL FLORIDA ("UCF"), by and through its counsel LYDECKER LLP, submits the following memorandum of points and authorities in support of its Motion to Dismiss Plaintiff Jane Doe's (hereinafter, "Plaintiff" or "Dr. Doe") First Amended Complaint pursuant to 28 USC sections 12(b)(2) and 12(b)(6). This Motion will be and is based on this notice and the accompanying memorandum of points and authorities.

This Motion will be and is also based on the pleadings, papers, and records presently on file in this action, on such further pleadings and papers as may hereinafter be presented, and on such oral and documentary evidence and objections as may be properly presented at the hearing on this Motion.

Under Rule 12(b)(6), plaintiff fails to state a cause of action for negligent defamation at pg. 15:9-28 through pg.16:1-20.

Dated: June 2, 2025                    **LYDECKER**

Christopher Campbell
Bryan Barnet Miller
Javkhlan Enkhbayar
Attorneys for Defendant the
University of Central Florida Board
of Trustees erroneously sued as the
University of Central Florida

# **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................1

II.     FACTUAL BACKGROUND ...............................................................4

III.    LEGAL ARGUMENT .........................................................................4

   A. STANDARD FOR DISMISSAL UNDER 12(b)(2) ....................................5

      1.)    NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE
             GENERAL JURISDICTION OVER THE UNIVERSITY OF
             CENTRAL FLORIDA UNDER *DAIMLER* AND ITS PROGENY. 5

      2.)    NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE
             SPECIFIC JURISDICTION BECAUSE PLAINTIFF'S CLAIMS
             DO NOT ARISE OUT OF THE UNIVERSITY OF CENTRAL
             FLORIDA'S CONTACTS WITH THE FORUM ............................8

         (a.)   There is no showing of purposeful availment.............................10

         (b.)   The claim must arise out of the defendant's forum-related
                activities. ...................................................................................12

         (c.)   Plaintiff cannot satisfy the first two prongs ...............................12

         (d.)   UCF now turns to the Ninth Circuit caselaw .............................12

                Ninth Circuit Jurisprudence .......................................................12

                Plaintiff fails to establish any nexus between UCF and Florida
                Politics and/or the College Fix..................................................13

         (e.)   Jurisdictional discovery will not change the outcome
                in this case. ...............................................................................14

   B. STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).......................15

                The Negligent Defamation Claim ..............................................15

                Even if the article is defamatory, UCF is protected by neutral
                reportage privilege.....................................................................16

IV.     CONCLUSION ..................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187

  (10th Cir. 2018) ................................................................. 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................... 11, 15, 16, 17

*Barry v. Time, Inc*. 584 F.Supp. 1110 (N.D. Cal. 1984).................... 2, 16

*Bautista v. Los Angeles Cty*., 216 F.3d 837 (9th Cir. 2000) ................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................... 11, 16, 17

*BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) .......................... 6

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,

  582 U.S. 255 (2017) ...................................................... 9, 13

*Burger King Corp. v. Rudzewicz* 471 U.S. 462 (1985).................... 9

*Calder v. Jones* 465 U.S. 783 (1984)................................... 2, 14

*Christian Research Institute v. Alnor* 148 Cal.App.4th 71 (2007). ...... 15

*Church of Scientology v. Adams*, 584 F.2d 893 (9th Cir.1978)........... 12

*Daimler AG v. Bauman* 571 U.S. 117 (2014)........................... passim

*Delker v. MasterCard Int'l, Inc.,* 21 F.4th 1019 (8th Cir. 2022) ......... 15

*Demaris v. Greenspun*, 712 F.2d 433 (9th Cir. 1983) .................... 12

*DVI, Inc. v. Superior Court* 104 Cal. App. 4th 1080 (2002) .............. 7

*Fireman's Fund Ins. Co. v. National Bank of Cooperatives*

  103 F.3d 888 (1996) ...................................................... 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

   592 U.S. 351 (2021) ........................................................................... 5, 9, 13, 14

*Gertz v. Welch*, 413 US 323 (1974) ....................................................................... 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915 (2011) ............ 6

*Hanson v. Denkla* 357 U.S. 235 (1958) ................................................................. 9

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,

   326 U.S. 310 (1945) ........................................................................................... 9

*Keeton v. Hustler Magazine, Inc.* 465 U.S. 770 (1984) ......................................... 9

*Perkins v. Benguet Consol. Mining Co.* 342 U.S. 437 (1952) ............................... 6

*Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797 (2004) .................. 10, 12

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ........... 5

*Smith v. Hood*, 900 F.3d 180  (5th Cir. 2018) ..................................................... 15

*Smith v. Maldonado* 72 Cal.App.4th 637 (1999) ................................................ 15

*Taylor v. Yee*, 780 F.3d 928 (9th Cir. 2015) ....................................................... 15

*ViaView, Inc. v. Retzlaff,* 1 Cal. App. 5th 198 (2016) ......................... 5, 8, 10, 11

*Walden v. Fiore* 571 U.S. 277 (2014) ......................................................... 8, 9, 10

*World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286  (1980) ....................... 9

**Statutes**

*Cal. Code Civ. Proc.* § 410.10 ............................................................................... 5

## I.    INTRODUCTION

In her First Amended Complaint (hereinafter: "FAC"), Dr. Doe[1] attempts to present a more compelling narrative for her negligent defamation case than in her original pleading.  The facts in the FAC are conclusory and speculative and fail to withstand the plausibility standards of *Iqbal* and *Twombly*.

If one assumes, *arguendo*, that the new factual allegations in the FAC are true, all that is established are the following points:

- Dr. Doe was a dual appointee of both (the University of Central Florida: "UCF") UCF and UCLA;

- That UCF paid for her travel, from the East Coast to the West Coast; and

- That Dr. Doe's published articles mentioned affiliations of both universities.

The new allegations are of no moment, are irrelevant to jurisdiction over the person and fail to differentiate how Dr. Doe is different from any other academic on a tenure track in the hundreds of universities in the United States.

The assertion of jurisdiction over the person on these facts is unreasonable, exceeds the bounds of reason, and rises to the level of illogic.

Plaintiff, Dr. Doe, concedes that she is a life-long resident of California, and any purported defamation occurred via two publications "Florida Politics" and the "College Fix." Both are Florida publications, and both are devoid of any affiliation with UCF.

/ / /

/ / /

---

[1] Dr. Doe's name is public records in her substitution of attorney in the Los Angeles Superior Court case which was removed to this District Court in the Central District of California. UCF has complied with Fed. R. Civ. P. rule 5.2 and L.R. 5.2-1, nonetheless in the FAC Dr. Doe again uses her real name (ECF No. 25, at pp. 31, 47)

UCF fails to understand how a dual appointment confers specific jurisdiction over Dr. Doe. UCF is a Florida state entity and UCLA is a California state entity. The two State universities are discrete and separate entities.

If one was to extrapolate Dr. Doe's legal argument to the rest of academia, this would provide absurd results. There are tens of thousands of academics that publish peer-reviewed articles in the United States.  If Dr. Doe's legal contentions were true, this would render a jurisdictional analysis over the person as irrelevant, and every tenure-track professor would have jurisdiction in the other 49 States of the United States.

To the extent that Dr. Doe relies on the United States Supreme Court case, *Calder v. Jones* 465 U.S. 783 (1984), that case is inapposite. *Calder v. Jones* concerned a public figure, *Shirley Jones¸* who was a professional entertainer who lived and worked in California and whose television career was centered in California. She was libeled by the tabloid the 'National Enquirer', which was edited in Florida. The National Enquirer had the largest circulation in California.

Dr. Doe denies that she is a public figure (*See,* Decl. Miller under L.R. 7-3) and without question "Florida Politics" and "The College Fix" have limited to no circulation in California.

For purposes of a Rule 12(b)(6) motion, Dr. Doe's sole means of establishing defamation is a "scienter standard" which is the incorrect standard for a defamation cause of action. Under the plain meaning of the language scienter ("knew or should have known") is different from a "reckless disregard of the truth".  More pointedly—given the viewpoint neutrality of the listserv—it is protected by the reportage privilege.

The neutral reportage privilege applies to "all republications of serious charges made by one participant in an existing public controversy against another participant in that controversy." *Barry v. Time, Inc*. 584 F.Supp. 1110, 1126 (N.D. Cal. 1984). This privilege exists so that "the public interest in being fully informed

about controversies that rage around sensitive issues" is afforded by the freedom of the press "to report such charges without assuming responsibility for them." *Id.* at 1124.

In her first amended complaint, Plaintiff alleges that "[d]efendants knowingly contributed to the dissemination of the false and defamatory article by distributing a link to it via the UCF News email listserv. (ECF No. 25, FAC ¶43).

FAC, ECF No. 25, at page 46, states "The News Clips shares stories, both positive and negative, related to UCF coverage in the media. These clips are for your awareness and cover various topics, including significant higher education issues."  Indeed, the rest of the articles shared along with the allegedly defamatory one cover topics ranging from UCF's assistant professor receiving a research award to UCF's intention to ban a social media platform on campus.  Given the viewpoint neutrality and the protection afforded by the neutral reportage privilege, Dr. Doe fails to state a cause of action under Rule 12(b)(6).

If *arguendo* Dr. Doe was to have a change of heart and suddenly decide she was a public figure (ECF No. 25, FAC ¶¶16-17) under *Gertz v. Welch*, 413 US 323 (1974), she would have to prove actual malice by clear and convincing evidence. UCF contends she could not meet this standard given her sole contention is the publication of the Florida Politics article on UCF's listserv. The UCF News Clips on the listserv "shares stories, both positive and negative, related to UCF coverage in the media"  (FAC, ECF No. 25, at page 46.)

It is unclear why this lawsuit was originally brought in California Superior Court. The putative defendants, Florida Politics and UCF, are in Florida. The Plaintiff was employed in Florida. The purportedly defamatory statements were published in Florida. California is an inconvenient forum, and the action currently before this Court would more appropriately and justly be tried elsewhere.

/ / /

/ / /

In these papers, UCF does not discuss *forum non conveniens* or choice of law but hereby expressly reserves its rights to raise these issues subsequently. These arguments are not waived by means of this briefing.

## II.    FACTUAL BACKGROUND

In the Fall of 2016, Defendant UCF employed Plaintiff as a tenure-track assistant professor. During the period leading up to the COVID pandemic beginning in 2020, Plaintiff's career outside of her employment with Defendant included "lecturing at numerous scientific conferences and speaker series" which caused her to be absent from her work at UCF on several occasions. [*See,* ECF No. 25].

On October 20, 2022, UCF provided Plaintiff with notice of intent to terminate her employment and gave her ten calendar days to respond. Her response was untimely. On November 1, 2022, Plaintiff was officially terminated.

On January 22, 2023, months after Plaintiff's termination, Florida Politics published an article about Dr. Doe. Later in January 2023, the web-based publisher, The College Fix, published its own article – "Professor secretly held two full-time jobs on opposite coasts" – restating and paraphrasing the content in the article from Florida Politics. Neither the "College Fix" or "Florida Politics" are related to UCF. Simply said, any nexus between the College Fix and Florida Politics is tenuous and attenuated. On May 5, 2025, Plaintiff filed her First Amended Complaint ("FAC"). As Exhibit G [ECF No. 25, FAC at pg. 46.] attached to her FAC, Plaintiff attached a screenshot of the listserv UCF uses to share any and all articles mentioning UCF in any capacity.

## III.   LEGAL ARGUMENT

Although Rule 12(b)(2) (lack of personal jurisdiction) and Rule 12(b)(6) (failure to state a claim) standards differ, both must be addressed here because the allegations supporting personal jurisdiction are conclusory. The Complaint lacks factual allegations that would withstand Ninth Circuit scrutiny.

/ / /

## A.    <u>STANDARD FOR DISMISSAL UNDER 12(b)(2)</u>

To rule on the merits of a case, a federal court must first determine that it has jurisdiction over the category of the claim in suit and the parties. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-431 (2007). In determining whether a federal court has jurisdiction over a party, the federal court ordinarily relies on state law. *Daimler AG v. Bauman* 571 U.S. 117, 225 (2014). "In a diversity action, the US District Court may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under California's long-arm statute and if that exercise of jurisdiction accords with federal constitutional due process principles." *Fireman's Fund Ins. Co. v. National Bank of Cooperatives* 103 F.3d 888, 893 (1996). California's long-arm statute states "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." *Cal. Code Civ. Proc.* § 410.10.

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). When a defendant moves to quash service of process, "the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction." *ViaView, Inc. v. Retzlaff,* 1 Cal. App. 5th 198, 209-210 (2016). To carry this burden, the plaintiff must "come forward with affidavits and other competent evidence … and cannot simply rely on allegations in an unverified complaint." *Id.* at 210.

1.) NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE GENERAL JURISDICTION OVER THE UNIVERSITY OF CENTRAL FLORIDA UNDER *DAIMLER* AND ITS PROGENY.

A court may only assert general jurisdiction over foreign (sister-state or foreign-country) corporations when their affiliations with the State are so "'continuous and systematic' as to render them essentially at home in the forum State." *See, Daimler AG v. Bauman* 571 U.S. 117, 127 (2014), ("Daimler") *quoting,*

*Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915, 925 (2011) ("Goodyear"). Only in an "exceptional case" can a court exercise general jurisdiction in a forum that is not "the corporation's place of incorporation [or] its principal place of business." *See*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412 (2017) ("BNSF"). An example of an exceptional case is when war forces a "corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which becomes "the center of the corporation's wartime activities." *Id.*, *quoting, Perkins v. Benguet Consol. Mining Co.* 342 U.S. 437, 448 (1952). No such exceptional case exists here.

In *Daimler*, *supra*, 571 U.S. 117, the Court declined plaintiff's invitation to "look beyond the exemplar bases Goodyear identified [place of incorporation and principal place of business], approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 137-138. "That formulation … is unacceptably grasping" and would impermissibly result in "exorbitant exercises of all-purpose jurisdiction" in every "State in which [a company's] sales are sizable." *Id.* at 138, the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" 139. **The proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'"** (Emphasis added.) *Daimler, supra*, 571 U.S. at 138–139, *quoting Goodyear, supra*, 564 U.S. at 919.)

"A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139, n. 20. "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (*id.*) In analyzing general jurisdiction, courts "examine the defendant's

/ / /

6

1  contacts when the alleged conduct occurred and at the time of service of summons."

2  *DVI, Inc. v. Superior Court* 104 Cal. App. 4th 1080, 1100 (2002).

3      UCF is a public university in the State of Florida. UCF is not incorporated in

4  California. UCF's headquarters are not in California. UCF's principal place of

5  business is not in California. UCF does not conduct business in California. UCF's

6  campus and headquarters are in Florida. UCF is not now and never has been "at

7  home" in California. *Daimler, supra*, 571 U.S. at 127. "A corporation that operates

8  in many places can scarcely be deemed at home in all of them." *id*. at 139, n. 20.

9  "Otherwise, 'at home' would be synonymous with 'doing business' tests framed

10  before specific jurisdiction evolved in the United States." (*id*.) In analyzing general

11  jurisdiction, courts "examine the defendant's contacts when the alleged conduct

12  occurred and at the time of service of summons." *DVI*, 104 Cal.App.4th 1080, at

13  1100.

14      UCF is a public university in the State of Florida. UCF is not incorporated in

15  California. UCF's headquarters are not in California. UCF's principal place of

16  business is not in California. UCF does not conduct business in California. UCF's

17  campus and headquarters are in Florida. UCF is not now and never has been "at

18  home" in California. *Daimler*, supra, 571 U.S. at 127.

19      [See Request for Judicial Notice, filed concurrently herewith,

20      Exhibit "A": 2024 Florida Statutes 1001.75, Definitions under

21      Section 7, Article IX of the Florida Constitution, para. 1 subd.

22      (d) definition of State Structure; Exhibit "B": Para: 5, Florida

23      College System Institution, Para. 9 subd. (g), includes the

24      University of Central Florida; Exhibit "C": State university

25      governance, para. (8) State College System; Exhibit "D": The

26      headquarters and principal place of business of the University of

27      Central Florida is at 4000 Central Florida Boulevard, Orlando,

28      Florida, 32816.]

Critically, Plaintiff's First Amended Complaint does not contest otherwise. [ECF No. 25] (see First Amended Complaint, section II, ¶2, section III, ¶¶8-9, "Parties" and "Jurisdiction & Venue")

There is no jurisdiction over the Florida State University in California because UCF does not have any "continuous and systematic" affiliations with California.

2.) NO BASIS EXISTS FOR CALIFORNIA TO EXERCISE SPECIFIC JURISDICTION BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF THE UNIVERSITY OF CENTRAL FLORIDA'S CONTACTS WITH THE FORUM

The Court may also exercise of specific personal jurisdiction based upon an examination of evidence presented by the Plaintiff. To carry the burden of establishing entitlement to jurisdiction, the plaintiff must "come forward with affidavits and other competent evidence … and cannot simply rely on allegations in an unverified complaint." *ViaView* at 210. The plaintiff has offered only an unverified Complaint to establish jurisdiction. This is categorically insufficient under *ViaView*.

However, even if the Court were to consider the allegations of Plaintiff's unverified First Amended Complaint, Plaintiff has failed to establish that UCF would be subject to specific personal jurisdiction. The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties." *See, Walden v. Fiore* 571 U.S. 277, 284 (2014).

As discussed, *supra*, California's long-arm statute is coextensive with federal due process requirements under the Fourteenth Amendment due process clause. Specific jurisdiction is founded "on an idea of reciprocity between a defendant and a State: When (but only when) a company 'exercises the privilege of conducting

activities within a state'— thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the company to account for related misconduct." *Ford* 592 U.S. 351, at 359, *quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945). Thus, "[t]he focus of the specific-jurisdiction analysis is 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, *supra*, 571 U.S. at 284, *quoting*, *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 775 (1984).

First, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" (*Ford*, *supra*, 592 U.S. 351, at 359, *quoting, Hanson v. Denkla* 357 U.S. 235, 253 (1958). Second, the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." (*Id.* at 359, *quoting Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,* 582 U.S. 255, 262 (2017), *quoting, Daimler, supra*, 571 U.S. at 127.

These two requirements are meant to provide a defendant "with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" See *Ford, supra*, 592 U.S. 351, at 358, *quoting Burger King Corp. v. Rudzewicz* 471 U.S. 462, 472 (1985). "A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Id., quoting World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 297 (1980) ("*World-Wide Volkswagen*").

In determining whether the defendant has sufficient minimum contact with the forum state, Courts apply the following test:

(a.) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws;

(b.) The claim must arise out of the defendant's forum-related activities, and the exercise of jurisdiction must be reasonable.

(c.) The plaintiff bears the burden of satisfying the first two prongs and its failure to do so results in the court's lack of personal jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co*. 374 F.3d 797, 802 (2004).

The main focus of this inquiry is what, if any, contacts the defendant himself has created with the forum state. *Walden v. Fiore* 571 U.S. 277, 284 (2014). In other words, the convenience of plaintiffs or third parties or plaintiff's contact with the forum state, no matter how significant it may be, are not considered in determining whether a court has specific jurisdiction over the defendant. *Id.* at 285. **Where the plaintiff experienced the injury is irrelevant**. *Id.* at 290.[2]

UCF is a Florida State Institution, with its headquarters and principal place of business located in Florida. (RJN filed concurrently herewith, Exhs. A-D; Plaintiff's FAC section II, ¶2.) Thus, unsurprisingly, the *Schwarzenegger* factors uniformly indicate that no basis exists for the Court to exercise jurisdiction over this case:

(a.)    There is no showing of purposeful availment

Plaintiff does not offer facts indicating that UCF conducted activities in the forum state of California. It is not "purposeful availment" for a third party to issue statements that were accessible to individuals in Los Angeles County

The operative term in the *Schwarzenegger* analysis is "purposeful," which suggests a deliberate, intentional action with a specific aim.

Plaintiff's FAC at ¶7 uses conclusory boilerplate language which is devoid of fact. This is Plaintiff's burden to carry Jurisdiction over the person through affidavits and competent evidence by a preponderance of the evidence. *ViaView, Inc. v. Retzlaff* 1 Cal.App.5th 198, 209–210 (2016).   To carry this burden, the

---

[2] In her Complaint, Plaintiff focused entirely her place of residence her Principal Place of Business and/or Work in California. Plaintiff's pleading is devoid focus on the University of Central Florida (UCF) which is her burden to carry.

NOTICE AND MOTION UNDER RULE 12(b)(2) AND 12(b)(6)

plaintiff must "come forward with affidavits and other competent evidence … and cannot simply rely on allegations in an unverified complaint." *Id*. at p. 210.

Plaintiff also uses legalese without a factual underpinning. She uses the language, "purposefully directed," "foreseeably knowing," "foreseeable caused."

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.,* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. Two working principles underlie *Twombly.* First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id* at 555. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Id.,* at 556. **A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.** While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Pp.1948-1951. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 , 129 S. Ct. 1937, 1948-1951 (2009).

(Emphasis added.)

(b.)    <u>The claim must arise out of the defendant's forum-related activities.</u>

Plaintiff fails to establish any forum-related activities by UCF. There is no nexus between "Florida Politics" and the "College Fix" (First Amended Complaint, ¶¶32-34, 35-37.)

(c.)    <u>Plaintiff cannot satisfy the first two prongs</u>

Plaintiff cannot carry her burden to satisfy the first two prongs of the *Schwarzenegger* analysis because, as a threshold matter, Plaintiff has not alleged any facts that might support the first two prongs of the *Schwarzenegger* analysis. The court cannot assert personal jurisdiction over Defendant UCF by requisite application/operation of procedure. *Schwarzenegger* at page 802.

(d.)    <u>UCF now turns to the Ninth Circuit caselaw</u>

*Ninth Circuit Jurisprudence*

The Ninth Circuit refused to find personal jurisdiction over the St. Louis-Post Dispatch, a Missouri publication, after it published five articles regarding Scientology. *Church of Scientology v. Adams*, 584 F.2d 893, 895 (9th Cir.1978). The California branch of the Church Scientology alleged that defendants made defamatory statements regarding how the church operates and treats its members, and about its founder. *Id*. at 895-896.

The court found that the defendants did not do business in California and did not advertise to the California market. *Id.* at 896. The court also found that the California circulation of defendant's newspaper consisted less than 1% of its general circulation. *Ibid*. Furthermore, the court found that defendants did not write about events occurring in California, that they did not do research in California, and that the only mention of a California resident was in reference to a person who was acting as a representative of the national Scientology organization. *Id.* at 898. Based on these findings, the court ruled that it did not have personal jurisdiction over defendants. *Demaris v. Greenspun*, 712 F.2d 433, 434 (9th Cir. 1983). [The applicable test is "whether or not it was foreseeable that a risk of injury by

NOTICE AND MOTION UNDER RULE 12(b)(2) AND 12(b)(6)

defamation would arise in the forum state." The Court noted that California events "were not the topic of the allegedly actionable writings, nor California readers a principal or secondary target of the articles." No research was done in California and the discussion was not as to the church's existence and activities in California; the discussion was of Scientology in general.]

*Plaintiff fails to establish any nexus between UCF*
*and Florida Politics and/or the College Fix*

It is well established that in order for a court to exercise specific jurisdiction, the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford, supra*, 141 S. Ct. at p. 1025, *quoting, Bristol-Myers*, p. 1780, *quoting Daimler, supra*, 571 U.S. at p. 127. A defendant's forum-state conduct is not "sufficient—or even relevant" if it has no connection to a plaintiff's claim. *Bristol-Myers*, at p. 1781. Plaintiff's claim, if any, is against Florida Politics and the College Fix, and *not* UCF. Assuming an attenuated and tenuous claim hypothetically existed between statements made by Roe 1 and Roe 2 of the UCF (Complaint ¶27), and assuming *arguendo* that the statements were untrue (this is contested and as alleged in the complaint the statements are true) there is no nexus between UCF and California. And there is no nexus between Florida Politics and the College Fix.

Per the complaint, all other allegedly defamatory statements were directly made by Florida Politics and then republished by College Fix.

Without a showing that Defendant made statements targeting California or Plaintiff's conduct in California, this Court cannot exercise specific personal jurisdiction over Defendant. The fact that Plaintiff resides in California and that her reputation may have been injured in California are insufficient for the Court to assert personal jurisdiction over Defendant without violating due process.

Conduct is relevant only if it establishes "a connection between the forum and the specific claims at issue." *Id*., at 1781. "When there is no such connection,

specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (*Id*.) *Ford, supra*, 141 S.Ct. 1017, held that "some relationships" among the defendant, the forum, and the litigation will support the exercise of specific jurisdiction without a "strict causal relationship between the defendant's in-state activity and the litigation." *Id*. at 1026. "**That does not mean anything goes.**" *Id*. at 1026. (Emphasis added.) "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id*. at 1026.

Plaintiff's complaint is rife with speculation and lacks foundation to confer Jurisdiction over the person. Her complaint must be dismissed for lack of Jurisdiction over the Person, that is lack of Jurisdiction over UCF.

Plaintiff relies on one case, *Calder v. Jones* 465 U.S. 783 (1984), to support her argument that California has personal jurisdiction over UCF.  To the extent that Dr. Doe relies on the United States Supreme Court case, that case is inapposite. *Calder v. Jones* concerned a public figure, *Shirley Jones¸* who was a professional entertainer who lived and worked in California and whose television career was centered in California. She was libeled by the tabloid the 'National Enquirer', which was edited in Florida. The National Enquirer had the largest circulation in California.

Dr. Doe denies that she is a public figure (*See,* Decl. Miller under L.R. 7-3) and without question "Florida Politics" and "The College Fix" have limited to no circulation in California.

(e.)    <u>Jurisdictional discovery will not change the outcome in this case.</u>

UCF is of the cogent belief that jurisdictional discovery will serve no purpose in this case as Plaintiff has already been given the opportunity to cure defects in her First Amended Complaint.  Plaintiff has failed to come forward with any competent evidence or declarations which establish jurisdiction over the person as to the University of Central Florida.

/ / /

### B.    STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).

A claim is also subject to a dismissal if there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *see Delker v. MasterCard Int'l, Inc.,* 21 F.4th 1019, 1024 (8th Cir. 2022). A "claim" is the set of "well-pleaded" factual allegations in a pleading which are intended by the pleader to establish a "plausible" right to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (a claim is the "aggregate of operative facts which give rise to a right enforceable in the courts")

In addition to holding that only a plausible claim for relief will survive a motion to dismiss, the *Iqbal* Court underscored that the "tenant that a court must accept as true all of the allegations contained in a complaint as inapplicable to legal conclusions." *Iqbal*, *supra*, 556 U.S. at 678; *Smith v. Hood*, 900 F.3d 180, 184 n. 5 (5th Cir. 2018) (allegation that plaintiff's commitment was "unlawful" is a "legal conclusion entitled to no presumption of correctness"); *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018).

*The Negligent Defamation Claim*

Defamation involves the "intentional publication of a statement of fact that is false, unprivileged, and has a tendency to injure or which causes special damage. *Smith v. Maldonado* 72 Cal.App.4th 637, 644 (1999). Furthermore, plaintiff has the burden to prove falsity of the allegedly defamatory statement by a preponderance of evidence. *Christian Research Institute v. Alnor* 148 Cal.App.4th 71, 81 (2007). Truth is an absolute and complete defense to a claim for defamation. (*Smith v. Maldonado* 72 Cal.App.4th 637, 646, 648 (1999).)

Plaintiff's factual allegations against UCF are also nebulous, amorphous, and unclear. It is impossible from Plaintiff's vague synopsis to determine what statements UCF made or did not make with respect to Plaintiff. Therefore, Plaintiff has not alleged facts with sufficient particularity to ascertain the nature of the

purportedly defamatory publication. Therefore, the Plaintiff has failed to state a claim upon which relief can be granted.

Furthermore, the cause of action for negligent defamation is impermissibly conclusory and boilerplate. (FAC ¶¶50-61). By way of example, the First Amended Complaint relies upon, as its factual basis, phrases such as: "the defamatory statements" (FAC ¶51), "unreasonably and negligently" (FAC ¶52), "defamatory" (¶¶51, 55), "libelous per se", (¶56)." These statements are all conclusions of law which cannot form the requisite basis of an actionable claim under *Iqbal* and *Twombly* standards.

*Even if the article is defamatory,*

*UCF is protected by neutral reportage privilege.*

The neutral reportage privilege applies to "all republications of serious charges made by one participant in an existing public controversy against another participant in that controversy." *Barry v. Time, Inc*. 584 F.Supp. 1110, 1126 (ND. Cal.1984). This privilege exists so that "the public interest in being fully informed about controversies that rage around sensitive issues" is afforded by the freedom of the press "to report such charges without assuming responsibility for them." *Id.* at 1124.

In her first amended complaint, Plaintiff alleges that "[d]efendants knowingly contributed to the dissemination of the false and defamatory article by distributing a link to it via the UCF News email listserv. (ECF No. 25, FAC ¶43). To support this allegation, Plaintiff attaches Exhibit G to her amended pleading. On the first page of Exhibit G, it states "**The News Clips shares stories, both positive and negative, related to UCF coverage in the media. These clips are for your awareness and cover various topics, including significant higher education issues**." (ECF No. 25, Plaintiff's FAC at pg. 46). Indeed, the rest of the articles shared along with the allegedly defamatory one cover topics ranging from UCF's assistant professor receiving a research award to UCF's intention to ban a social

16

media platform on campus. (*Ibid.* Plaintiff's FAC). It is evident from the Exhibit that UCF shared the allegedly defamatory article, among other articles discussing UCF in some capacity, to keep its employees appraised of how UCF is being depicted in the media and what stances it is taking on social issues. Hence, UCF's sharing of the allegedly defamatory article on its listsrv is protected by the neutral reportage privilege.

## IV.    CONCLUSION

Plaintiff, Dr. Doe, fails in her burden to support the assertion of Personal Jurisdiction over the University of Central Florida. Moreover, the entire complaint is devoid of facts that would support a cause of action for defamation. Plaintiff further fails to state a cause of action for negligent defamation because Plaintiff fails to establish a relationship between the College Fix, Florida Politics, and UCF. Assuming the article published on the listserv of UCF was defamatory, the listserv is viewpoint neutral and is protected by the neutral reportage privilege.

Finally, as matter of standard form and substance, Plaintiff's claim of defamation is devoid of facts and impermissibly conclusory under *Iqbal* and *Twombly*. Based on the foregoing, Defendant UCF respectfully requests that the Complaint be dismissed under Rules 12(b)(2) and 12(b)(6).

Date June 2, 2025                    **LYDECKER**

Christopher J. Campbell
Bryan Barnet Miller
Javkhlan Enkhbayar
Attorneys for the University of
Central Florida Board of Trustees
erroneously sued as The University of
Central Florida

17

**PROOF OF SERVICE**

United States District Court

Central District of California

*Jane Doe*

v.

*John Roe 1, et al.,*

Case No. 2:25-cv-02191-HDV-KES

I, Devon MacGregor, am employed in Los Angeles County, California. I am over the age of 18 years and not a party to the within action. My business is 523 W. 6th Street, Suite 716, Los Angeles, CA 90014, (213) 226-7068.

On June 2, 2025, I caused to be served the following documents(s): as follows:

**NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT THE UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES ERRONEOUSLY SUED AS THE UNIVERSITY OF CENTRAL FLORIDA UNDER 28 U.S.C. SECTIONS 12(b)(2) AND 12(b)(6)**

**BY ELECTRONIC SERVICE:** I caused said documents to be transmitted by electronic mail. The name(s) and email address(es) of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

I declare that penalty of perjury under the laws of the State of California, that the foregoing is true and correct. Executed on June 2, 2025, at Winchester, California.

*Devon MacGregor*
Devon MacGregor

18
NOTICE AND MOTION UNDER RULE 12(b)(2) AND 12(b)(6)

# SERVICE LIST

United States District Court

Central District of California

*Jane Doe*

v.

*John Roe 1, et al.,*

Case No. 2:25-cv-02191-HDV-KES

Jane Doe, PhD
1217 Wilshire Blvd.
Santa Monica, CA 90403
(310) 409-6130
doeplaintiffphd@gmail.com
***Plaintiff in Pro Per***

NOTICE AND MOTION UNDER RULE 12(b)(2) AND 12(b)(6)