UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CENTRAL FLORIDA'S BOARD OF TRUSTEES,<br><br>Defendant. | Case No. 2:25-cv-02191-HDV-PD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [37]** |

## I. INTRODUCTION

This case arises from Plaintiff Jane Doe's dual appointment at the University of Central Florida ("UCF") and University of California, Los Angeles ("UCLA"). Plaintiff alleges that though she had permission from UCF to maintain her dual appointment, UCF provided statements to news outlets that she deceived UCF and maintained dual employment in violation of UCF policies, leading to reputational harm.

Before the Court is the Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ("Motion") [Dkt. 37]. Defendant contends that the Court does not have personal jurisdiction to adjudicate these actions, and that even if it did, Plaintiff failed to plead sufficient cognizable legal claim. Motion at 17. For the foregoing reasons, the Court disagrees and on that basis denies the Motion.

## II. BACKGROUND[1]

In the fall of 2016, Plaintiff, a non-tenure track Adjunct Assistant Professor at UCLA, was hired as a tenure-track Assistant Professor at UCF. First Amended Complaint ("FAC") ¶¶ 14, 18–19 [Dkt. 25]. Despite her new position, Plaintiff continued her adjunct work at UCLA, with her UCF supervisors' knowledge and permission. *Id.* ¶ 20, Ex. A. Plaintiff disclosed her dual affiliations, including on approved annual reports, which were signed and approved by UCF supervisors. *Id.* ¶ 21. Leveraging her dual appointments, Plaintiff involved UCF students in joint research efforts, bringing them on trips (with UCF funding) to receive training in magnetic resonance imaging ("MRI") and other imaging techniques in her UCLA laboratory. *Id.* ¶ 22, Ex. B.

Plaintiff alleges that maintaining multiple affiliations was a common practice among faculty at UCF, UCLA, and within the scientific community. *Id.* ¶¶ 20–21. For example, Plaintiff co-authored numerous scientific papers with members of the UCF community holding dual affiliations. *Id.*

---

[1] The Court accepts all of Plaintiff's plausible allegations as true, as it must at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1    On April 1, 2022, Plaintiff resigned from her appointment at UCLA following the conclusion of her grant-funded work, but maintained an honorary appointment. *Id.* ¶ 28. In 2022, Plaintiff submitted her tenure dossier to UCF for review, with positive letters from external reviewers. *Id.* ¶ 27. But on October 20, 2022, UCF issued Plaintiff a notice of intent to terminate her employment. *Id.* ¶ 29. Plaintiff responded, contending that UCF's decision was biased and based on false information, but she was nonetheless terminated a few weeks later. *Id.* ¶¶ 30–31.

On January 22, 2023, Florida Politics LLC ("Florida Politics") published an article entitled *Ghosted: Double Life of UCF Professor Unravels*, claiming that Plaintiff "secretly" held dual appointments at UCLA and UCF. *Id.* ¶¶ 32–33. Shortly after, College Fix published a similar online article, perpetuating the narrative that Plaintiff held dual appointments in secret. *Id.* ¶¶ 35–37.

Plaintiff alleges that unspecified defendants and UCF provided information to the media that formed the basis for these articles. Before publication, Florida Politics requested comment from UCF, but UCF allegedly provided selective information about Plaintiff's employment. *Id.* ¶¶ 38–39, 42, Exs. D, E, F. UCF provided the following statement:

> As stated in the report, "Dr. [Doe's] actions identified during the investigation demonstrate that she took deliberate actions to purposely deceive UCF," including describing her position with UCLA as "an honorary type of research staff position." It became clear during the investigation that Dr. [Doe] was dually employed and compensated and in violation of numerous university policies and federal sponsor requirements, and the university proceeded with termination.

*Id.* ¶ 40; Ex. E.

Florida Politics also requested Plaintiff's written response to the termination notice, *id.*, but UCF forwarded her response only after the Florida Politics reporter completed her story. *Id.* ¶ 44, Ex. H. UCF also distributed a link to the article via the UCF News email listserv, amplifying its reach. *Id.* ¶ 43, Ex. G. After receiving Plaintiff's written response, Florida Politics published a second article on February 9, 2023, which presented an account more favorable to Plaintiff. *Id.* ¶ 45.

The articles caused a ripple effect. Offers to interview at the University of Miami and Stanford University were rescinded. FAC ¶ 48. Nor was Plaintiff able to obtain a teaching position in the UCLA Psychology Department. *Id.* UCLA was unwilling to allow Plaintiff an honorary affiliation in the Department of Psychiatry and Biobehavioral Medicine. *Id.* ¶¶ 49.

3

1  Plaintiff initiated the instant action for defamation in Los Angeles Superior Court on January
2  19, 2024. Notice of Removal, Ex. A [Dkt. 1]. UCF removed to federal court. *Id.* On June 2, 2025,
3  UCF moved to dismiss. On July 8, 2025, the Court denied Plaintiff's Motion to Remand, finding
4  that the amount in controversy was easily met. [Dkt. 49]. On July 17, 2025, the Court heard oral
5  argument on UCF's Motion and took the matter under submission. [Dkt. 54].

### III.  LEGAL STANDARD

#### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek to dismiss a complaint because the court lacks personal jurisdiction. The plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("'[W]e only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'"). "[U]ncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

#### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss all or portions of a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

4

*Twombly*, 550 U.S. at 555). Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. In other words, dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV. DISCUSSION

### A. Personal Jurisdiction

Personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1145–55 (citation omitted). California's long arm statute is "coextensive with federal due process requirements," such that the jurisdictional analyses under state law and federal due process law are identical." *Schwarzenegger*, 374 F.3d at 800–801. The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction over a nonresident defendant may be general or specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). A corporate defendant may be subject to general jurisdiction in a state only if its contacts with that state are so "continuous and systemic" that it is "essentially at home" in the state. *See Ford Motor Company v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S 915, 919 (2011)). General jurisdiction is appropriate over a corporation in its place of incorporation and its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Plaintiff does not contend that this Court has general jurisdiction.

A court has specific jurisdiction over a claim that arises out of a defendant's forum-related activities. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). To establish specific jurisdiction, the following three-part test must be met:

5

>   (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which she purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). Plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### 1. **Purposeful direction**

In tort cases, the Court inquires whether a defendant "'purposefully direct[s its] activities' at the forum state, applying an 'effects' that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 803). The effects test, as set forth in *Calder v. Jones,* 465 U.S. 783, 789–90 (1984), imposes three requirements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citation omitted). The effects test permits the Court to maintain personal jurisdiction over a defendant who "never set foot in the forum state, if the defendant's contacts with the forum state are out-of-state acts that had an effect in the forum." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022)

Here, UCF undoubtedly undertook intentional acts by providing information to Florida Politics, and by sharing the consequent story on UCF's email listserv. *Id.* ¶¶ 38–43. The first prong is amply satisfied.

The second and third *Calder* prongs are also met. The Ninth Circuit's recent decision in *Burri L. PA v. Skurla* is instructive on these points. In *Burri*, a religious diocese in Phoenix hired Dean Burri, a Florida lawyer, to investigate their health care benefits. *Burri*, 35 F.4th at 1210. Upon Burri's findings of irregularities in their health care plan, the diocese, represented by Burri, filed suit

6

in Arizona. *Id.* William Skurla, a Pennsylvania bishop and defendant in the Arizona action, allegedly commenced a campaign of defamation against Burri stating that he was "greedy, incompetent, and inexperienced." *Id.* at 1210–11. The Ninth Circuit found that Skurla's defamatory communications targeted Arizona and were likely to cause harm there, because they were "designed to interfere with an Arizona lawsuit and an Arizona contract." *Id.* at 1213. The Court specifically found that "[p]recedent establishes both that such acts target the forum state itself and that such acts are likely to cause harm in Arizona." *Id.*

So too here. Though UCF communicated with a Florida publication, its actions were designed to interfere with Plaintiff's university-related activities in California and were thus likely to cause harm in California. *Id.* at 1214 (citing *Walden v. Fiore*, 571 U.S. 277, 268–88 (2014) (" . . . [T]he false statements had 'a California focus' because they concerned 'the plaintiff's activities in California.'"). Moreover, UCF circulated the defamatory content through its listserv, when, given UCF's ties with California institutions, UCF knew or should have known would cause harm in California. FAC ¶¶ 21–22 (noting that UCF students traveled to UCLA and that many UCF faculty members held multiple affiliations); *Burri*, 35 F.4th at 1216 ("Because defamation causes harm to the victim's reputation in the forum where it circulates, '[t]he tort of libel is generally held to occur wherever the offending material is circulated.'").

### 2. Nexus

To establish specific jurisdiction, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). The Supreme Court has clarified that the standard does not require a strict causal connection between the defendant's contacts with the forum and the plaintiff's claims. *See id.* at 362 ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."). This too is easily met. Plaintiff's claim arises out of UCF's allegedly defamatory communications aimed at California and its circulation of purportedly defamatory material in California through its listserv.

### 3. Reasonableness

Lastly, a court's exercise of personal jurisdiction over a defendant must be reasonable, so that it comports with "traditional conception[s] of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 320. In making this evaluation, courts must balance seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993) (citations omitted).

Though Defendant would be burdened with being hailed into court in California and alternative forums exist, several factors weigh in favor of California's exercise of jurisdiction. California has an interest in protecting its citizens from defamation, and the instant forum affords Plaintiff's convenient and effective relief. Witnesses are present in both Florida and California, with more evidence of damages present in California. On balance, the Court finds that its exercise of personal jurisdiction over UCF is not unreasonable.

### B. Sufficiency

To plead defamation, a plaintiff must allege: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010). Publication refers to the "communication to some third person who understands the defamatory meaning of the statement and its application." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999), *as modified* (June 23, 1999) ("Publication need not be to the 'public' at large; communication to a single individual is sufficient."). Truth is a complete defense to defamation, but the defendant "must 'justify,' or show the truth of the statements." *Id.* at 646. In libel actions, public figures must prove that the defamatory statements were made with actual malice but private figures need only prove negligence. *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 682 (2010), *as modified on denial of reh'g* (Feb. 24, 2010); *id.* (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 398 (2001)) ("The rationale

8

for such differential treatment is, first, that the public figure has greater access to the media and therefore greater opportunity to rebut defamatory statements, and second, that those who have become public figures have done so voluntarily and therefore 'invite attention and comment.'").

    Plaintiff sufficiently pleads defamation. She alleges that while UCF claimed she "took deliberate actions to purposely deceive UCF" and "was dually employed and compensated and in violation of numerous university policies," she in fact maintained dual appointments with UCF's full awareness and her supervisor's express agreement. FAC ¶¶ 20, 40, Ex. E. She further alleges that UCF published this statement by sending it to Florida Politics. *Id.* ¶¶ 38–40. Here, the parties do not dispute that Plaintiff is a private figure, and her allegations suffice to establish at least negligent conduct. Motion at 2. Finally, Plaintiff alleges that she suffered reputational harm from UCF's actions, losing her affiliation with UCLA and opportunities to interview at other institutions. FAC ¶¶ 47–49. At this stage, that is enough.[2]

V.    **CONCLUSION**

    Defendant's Motion to Dismiss is denied.

Dated: August 14, 2025

                                     Hernán D. Vera
                                     United States District Judge

---

[2] UCF's attempt to invoke the neutral reportage privilege is unavailing. Motion at 16–17. As UCF itself acknowledges, Plaintiff is a private figure, and California has declined to extend the neutral reportage privilege to defamatory statements about private figures. *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 272–73 (1998), *as modified* (Dec. 22, 1998).

UCF's Requests for Judicial Notice is denied as moot. [Dkt. 38, 48].

9