UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, and individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN ROE 1, an individual; JOHN ROE 2, an individual; and DOES 1-100, inclusive,<br><br>                    Defendants. | Case No. 2:25-cv-02191-HDV-PDx<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE [83]** |

## I.    INTRODUCTION

This case arises from Plaintiff Jane Doe's dual appointment at the University of Central Florida ("UCF") and University of California, Los Angeles ("UCLA").  Plaintiff alleges that though she had permission from UCF to maintain her dual appointment, UCF provided statements to news outlets that she deceived UCF and maintained dual employment in violation of UCF policies, leading to reputational harm.

Before the Court is Defendant University of Central Florida Board of Trustees' ("UCF") Motion to Transfer Venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) ("Motion").  [Dkt. 83].  Having considered the parties' submissions and the relevant law, the Court concludes that UCF has not made a sufficient showing that transfer is appropriate under the Section 1404 convenience factors.  The Motion is therefore denied.

## II.    BACKGROUND

In the fall of 2016, Plaintiff, a non-tenure track Adjunct Professor at UCLA, was hired as a tenure-track Assistant Professor at UCF.  First Amened Complaint ("FAC") ¶¶ 14, 18–19 [Dkt. 25].  Despite her new position, Plaintiff continued her adjunct work at UCLA, with her UCF supervisors' knowledge and permission.  *Id*. ¶ 20, Ex. A.

On April 1, 2022, Plaintiff resigned from her appointment at UCLA following the conclusion of her grant-funded work, but maintained an honorary appointment.  *Id*. ¶ 28.  October 20, 2022, UCF issued Plaintiff a notice of intent to terminate her employment.  *Id*. ¶ 29.  Plaintiff responded, contending that UCF's decision was biased and based on false information, but she was nonetheless terminated a few weeks later.  *Id*. ¶¶ 30–31.

On January 22, 2023, Florida Politics LLC ("Florida Politics") published an article entitled *Ghosted: Double Life of UCF Professor Unravels*, claiming that Plaintiff "secretly" held dual appointments at UCLA and UCF.  *Id*. ¶¶ 32–33.  Shortly after, College Fix published a similar online article, perpetuating the narrative that Plaintiff held dual appointments in secret.  *Id*. ¶¶ 35–37.

Plaintiff alleges that unspecified defendants and UCF provided information to the media that formed the basis for these articles.  Before publication, Florida Politics requested comment from UCF, but UCF allegedly provided selective information about Plaintiff's employment.  *Id*. ¶¶ 38–39,

1

42, Exs. D, E, F.  UCF provided the following statement:

> As stated in the report, "Dr. [Doe's] actions identified during the investigation demonstrate that she took deliberate actions to purposely deceive UCF," including describing her position with UCLA as "an honorary type of research staff position." It became clear during the investigation that Dr. [Doe] was dually employed and compensated and in violation of numerous university policies and federal sponsor requirements, and the university proceeded with termination.

*Id*. ¶ 40; Ex. E.

Florida Politics also requested Plaintiff's written response to the termination notice, *id*., but UCF forwarded her response only after the Florida Politics reporter completed her story.  *Id*. ¶ 44, Ex. H.  UCF also distributed a link to the article via the UCF News email listserv, amplifying its reach.  *Id*. ¶ 43, Ex. G.  After receiving Plaintiff's written response, Florida Politics published a second article on February 9, 2023, which presented an account more favorable to Plaintiff.  *Id*. ¶ 45.

The articles caused a ripple effect.  Offers to interview at the University of Miami and Stanford University were rescinded.  *Id*. ¶ 48.  Nor was Plaintiff able to obtain a teaching position in the UCLA Psychology Department.  *Id*.  UCLA was unwilling to allow Plaintiff an honorary affiliation in the Department of Psychiatry and Biobehavioral Medicine.  *Id*. ¶¶ 49.

Plaintiff initiated the instant action for defamation in Los Angeles Superior Court on January 19, 2024.  Notice of Removal, Ex. A [Dkt. 1].  UCF removed to federal court.  *Id*. UCF filed this Motion to Transfer on April 7, 2026.  Plaintiff filed her Opposition on April 22, 2026 [Dkt. 89], and UCF filed its Reply on May 6, 2026 [Dkt. 91].  The Court heard oral argument on May 21, 2026 and took the matter under submission.  [Dkt. 94].

**III.   LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The analysis under § 1404(a) is two-fold.  First, the court must find that the action "might have been brought" in the transferee district— meaning the transferee court has personal jurisdiction over the defendant and venue is proper there.  *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).  Second, the court must balance the convenience of the parties and witnesses and the interest

2

of justice.  28 U.S.C. § 1404(a).  Relevant considerations include: (1) the location where the relevant agreements were negotiated and executed; (2) the state most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in litigation costs between the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum-selection clause; and (10) the relevant public policy of the forum state, if any.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The decision to transfer requires "an individualized, case-by-case consideration of convenience and fairness," and no single factor is dispositive.  *Id*. at 498 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013).  Nonetheless, the moving party bears the burden of demonstrating that transfer is appropriate.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**IV.    DISCUSSION**

There is no dispute that this action could have been brought in either the Central District of California or the Middle District of Florida, satisfying the threshold requirement for transfer under Section 1404(a).  Although the action could have been brought in Florida, UCF has not carried its burden of showing that the balance of factors clearly favors transfer.

***Plaintiff's Choice of Forum.***  A plaintiff's choice of forum is ordinarily entitled to great deference, particularly where the plaintiff resides in the chosen forum.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("In judging the weight to be accorded [plaintiff]'s choice of forum, consideration must be given to the extent of both [plaintiff]'s and [defendant's] contacts with the forum[.]").  This deference is diminished, but not eliminated, when "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id*.

Here, Plaintiff's choice of forum is entitled to deference.  She is a California resident who lives and works in this District, and she selected this forum as her home.  Opposition at 4.  And while many of the operative facts did occur in Florida, California has meaningful connections to the litigation.  Plaintiff's professional reputation, the relationships damaged by the alleged defamatory

3

statements, and the loss of employment opportunities she suffered are all centered in California, where she lives and works. *Id*. at 5–6. The harm, in short, was principally felt here. These contacts are meaningful enough to afford Plaintiff's choice of forum significant weight.[1]

*Convenience of the Witnesses.* UCF argues that most key witnesses are located in Florida, specifically, more than sixteen Florida-based investigators, compliance personnel, administrators, and the UCF communications officer who handled the Florida Politics media inquiry, and non-party witness such as Florida Politics journalists who authored and published the alleged defamatory article. *See* Motion at 6–7. UCF contends that the non-party witnesses can be compelled to testify by subpoena only in Florida and not in the Central District of California. *Id*. at 7.

The Court nonetheless finds this factor insufficient to tip the balance decisively toward transfer. First, UCF provides no evidence that any non-party witnesses, including the key Florida Politics witnesses, are unwilling to testify in California or that their appearance could not be secured by agreement, deposition, or remote testimony. The mere theoretical unavailability of compulsory process for non-party witnesses does not compel transfer, particularly in the modern litigation environment where remote and video testimony are widely available and accepted. In addition, Plaintiff has identified several California-based witnesses who are relevant to show the damages element of her defamation claim. Opposition at 7. UCF therefore cannot show that the convenience of non-party witnesses—who are located in both Florida and California—warrants transfer.

As to the party witnesses, those located in Florida can be compelled to testify by virtue of their employment relationship with UCF. *See Accentra, Inc. v. Staples, Inc.*, No. 07-cv-5862-ABC-RZ, 2008 WL 7400627, at *5 (C.D. Cal. Feb. 27, 2008). And UCF has not made a sufficient showing that requiring party witnesses to appear in Los Angeles during trial would impose undue

---

[1] Moreover, the Court's prior jurisdictional conclusion that UCF purposefully directed its activities at California supports the Court's finding herein that California has significant connection to the litigation. *See* Order Denying Defendant's Motion to Dismiss [Dkt. 68] at 7 ("Though UCF communicated with a Florida publication, its actions were designed to interfere with Plaintiff's university-related activities in California and were thus likely to cause harm in California. . . . Plaintiff's claim arises out of UCF's allegedly defamatory communications aimed at California and its circulation of purportedly defamatory material in California through its listserv.").

4

hardship.  On balance, the witness convenience factor is, at best, neutral.

***Interests of Justice.***  UCF has not established that Florida's interest in the litigation, "judicial economy and the efficient administration of justice," or any other relevant factor warrants transfer in the "interests of justice."  *See* Motion at 9.  While Florida may have an interest in litigating disputes involving its public universities, UCF has not explained how Florida's interest outweighs California's, especially given the lawsuit's connection to California.  And UCF cannot show how transferring this case now, when it has been litigated for over a year in California, would promote judicial economy where this Court is familiar with the issues and is equally capable of efficient case management.

In sum, the Court concludes that UCF's motion would simply shift the inconvenience of litigating out of state from a *pro se* plaintiff to a large, public university with plenty of means to litigate anywhere in the United States.  There is no basis to transfer venue to Florida, and Section 1404(a) certainly does not compel such a transfer on this record.

**V.      CONCLUSION**

For the foregoing reasons, Defendant's Motion to Transfer Venue is denied.

Dated: June 8, 2026

_____
Hernán D. Vera
United States District Judge

5